In re EXPRESS AMERICA,
INC., Debtor.

EXPRESS AMERICA, INC., Plaintiff,

v.

TAMKO ASPHALT PRODUCTS, INC.,
Defendant/Third–Party Plaintiff,

v.

HORIZON TRANSPORTATION, INC.,
Third–Party Defendant.

Bankruptcy No. 90–2110–BM.
Adv. No. 90–0422–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

Oct. 16, 1991.

Philip E. Beard, II, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, Pa., for plaintiff/debtor.

Joseph S. Sisca, Buchanan Ingergoll, P.C., Pittsburgh, Pa., for defendant/third party plaintiff TAMKO Asphalt Products, Inc.

## MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

TAMKO Asphalt Products, Inc. ("TAMKO") has brought a Motion For Sanctions against debtor and its counsel pursuant to Bankruptcy Rule 9011. According to TAMKO, the allegations against it stated in the complaint at Adversary No. 90–0422–BM are neither well-grounded in fact nor warranted by law. TAMKO seeks to recoup substantial legal fees and expenses incurred in connection with this adversary action and this motion.

Express America, Inc. ("debtor") has reciprocated by bringing a Counter–Motion For Sanctions against TAMKO and its counsel pursuant to Rule 9011. According to debtor, TAMKO's motion was intended to harass and to intimidate it. Debtor seeks to recoup its own legal fees and expenses incurred in connection with TAMKO's Rule 9011 motion.

Both motions will denied for the reasons set forth below.

### I

### BACKGROUND

Debtor filed a voluntary chapter 11 petition on July 13, 1990. The case ultimately was converted to a chapter 7 proceeding in December of 1990.

On September 20, 1990, debtor commenced a turnover action against TAMKO at Adversary No. 90–04222–BM. According to debtor, it hauled various goods on behalf of TAMKO, at TAMKO's request, which service TAMKO agreed to pay for.

It is alleged that the sum of $14,915.91 is due and owing from TAMKO. According to debtor, this sum is property of debtor's estate to which debtor is entitled under 11 U.S.C. § 542. Debtor sought judgment in its favor and against TAMKO in the amount of $14,915.91, plus interest at the rate of six percent (6%) *per annum.*

TAMKO denied all of the above allegations in its Answer filed on November 1, 1990.

On January 29, 1991, TAMKO filed a Motion To Interplead, in which it sought leave of court to join Horizon Transportation, Inc. ("Horizon") as interpleader defendant. TAMKO sought a determination whether debtor or Horizon was entitled to the sum of $2,196.43, the amount allegedly due and owing for services rendered by Horizon for which TAMKO had not paid Horizon. TAMKO's motion was granted on February 6, 1991, whereupon TAMKO paid said sum into court and was relieved of any further liability for that amount.

On March 7, 1991, debtor filed a Motion For Approval Of A Proposed Settlement of the adversary action. Debtor alleged that A.J. Bierman, President of Horizon, had agreed at his deposition taken on February 12, 1991 to the entry of a judgment in the interpleader proceeding against Horizon and in favor of debtor in the amount of $2,196.43. Debtor in turn agreed to dismiss its action against TAMKO. An Order was entered by this court on April 29, 1991, approving the proposed settlement of Adversary No. 90–0422–BM.

On April 19, 1991, prior to a ruling by the court on debtor's above motion, TAMKO filed the Rule 9011 motion for sanctions which is before the court at this time.

Finally, debtor responded to TAMKO's Rule 9011 motion by filing its own Rule 9011 motion against TAMKO and its counsel on May 14, 1991.

## II

### STATEMENT OF APPLICABLE LAW

Bankruptcy Rule 9011 provides in pertinent part as follows:

(a) *Signature.* Every petition, pleading, motion and other paper served in a case under the Code on behalf of a party represented by an attorney ... shall be signed by at least one attorney of record in the attorney's individual name ... A party who is not represented by an attorney shall sign all papers.... The signature of an attorney or a party constitutes a certification that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

■ Bankruptcy Rule 9011 "tracks FED. R.CIV.P. 11, with only such modifications as are appropriate in bankruptcy matters. In providing for sanctions, Rule 9011 discourages in bankruptcy proceedings the same type of conduct which FED.R.CIV.P. 11 proscribes". *Cinema Service Corp. v. Edbee Corp.,* 774 F.2d 584, 585 (3rd Cir. 1985). Rule 9011 is designed to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation ..." *Lieb v. Topstone Industries, Inc.,* 788 F.2d 151, 157 (3rd Cir.1986).

■ Subjective good faith no longer provides the "safe harbor" it once did. *Id.* The test is an objective one of reasonableness under the circumstances. *Dura Systems Inc. v. Rothbury Investments, Ltd.,* 886 F.2d 551, 556 (3rd Cir.1989).

■ The required certification constitutes a warrant that the document is not being used for some improper purpose, such as to harass, cause undue delay, or to needlessly increase the cost of litigation. *Lieb,* 788 F.2d at 157.

■ Imposition of sanctions is mandatory, not discretionary, when Rule 9011 has been violated. *In re Chisum,* 847 F.2d 597, 599 (9th Cir.1988). Use of the word "shall" is meant to overcome the reluctance of trial judges to impose sanctions against errant counsel and parties. *Lieb,* 788 F.2d at 157. Rule 9011 does, however, grant the trial judge, broad discretion to determine the type of sanction to be imposed. The rule avoids placing explicit limitations on the kinds of sanctions that may be imposed. They only need be "appropriate". *Id.* Although a subjective test is not to be employed in determining initially whether sanctions must be imposed, it may be relevant in determining the appropriate sanction. *Id.*

■ The primary purpose of Rule 11 is to deter abuses of the judicial process. *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191, 194 (3rd Cir.1988). Sanctions that deter are necessary to vindicate the court's authority, to remind those who need reminding of the protocol, and to ensure orderliness in the judicial process. *Anderson v. Beatrice Foods Co.,* 900 F.2d 388 (1st Cir.1990). Rule 11 is not intended, however, "to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories". *Gaiardo v. Ethyl Corp.,* 835 F.2d 479, 482 (3rd Cir.1987).

■ A particular sanction is "appropriate" when it is the *minimum* required to deter the offending behavior. *Doering,* 857 F.2d at 194. The least severe sanction adequate to effect deterrence should be imposed. *Id.*

■ As the language of Rule 9011 states, counsel fees and expenses may be an appropriate sanction. The starting point for determining the amount of attorney's fees is the so-called "lodestar" calculation, which is the product of the number of hours spent in response to the objectionable action multiplied by an hourly fee based on the prevailing market rate. *Doering,* 857 F.2d at 195.

### III

### MOTION FOR SANCTIONS BY TAMKO

■ TAMKO contends that Rule 9011 sanctions are appropriate because the cause of action set forth in the debtor's complaint is neither well-grounded in fact nor warranted by law. According to TAMKO, debtor brought suit against the wrong party. TAMKO claims that it had contracted with *Horizon,* not debtor, concerning shipment of TAMKO's products. In addition, TAMKO points out that the carrier-agent agreement upon which debtor is relying was with A.J. Trucking Co., an entity altogether distinct from Horizon, not with Horizon.

TAMKO's argument is unsound in several respects.

The cause of action set forth in debtor's complaint was well-grounded in fact. Prior to the filing of its complaint, debtor had conducted a reasonable inquiry from which it inferred that Horizon, with whom TAMKO had contracted regarding the shipping of its products, and A.J. Trucking were the same entity.

In March of 1990, debtor entered into a carrier-agent agreement with A.J. Trucking, whereby the latter served as an agent for the former. The agreement provided that all accounts receivable generated as a result of the transporting of freight by A.J. Trucking were to be in debtor's name. A.J. Trucking had no right to those accounts receivable. Any payments on such accounts receivable received by A.J. Trucking were to be forwarded by it to debtor.

Before it entered into the agreement with A.J. Trucking, debtor required A.J. Trucking to submit an information sheet, the purpose of which was to provide debtor with background information about a prospective agent. The prospective agent identified itself as A.J. Trucking, Inc., t/a Horizon Trans. Inc. As far as debtor was

concerned, A.J. Trucking and Horizon were one and the same entity.

The cause of action set forth in debtor's complaint also was warranted under existing law. TAMKO's insistence that the gravamen of the complaint asserts an action for breach of contract is erroneous. Rather, it asserts a turnover action pursuant to 11 U.S.C. § 542. Thus, the fact that debtor incorrectly asserts in paragraphs 5 and 6 of the complaint that *debtor* hauled goods on behalf of TAMKO and that TAMKO agreed to pay *debtor* for so doing is not relevant to its cause of action against TAMKO. These statements are surplusage. They would be salient only if the cause of action against TAMKO were for breach of contract.

11 U.S.C. § 542(a) provides as follows:

Except as provided in subsection (c) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

Considering debtor's reasonable belief that A.J. Trucking was the same as Horizon, the claim by debtor in paragraph 7 of its complaint that it was entitled to recover from TAMKO was warranted under section 542(a) of the Code. As has been indicated, debtor was entitled to all accounts receivable generated pursuant to its carrier-agent agreement with A.J. Trucking. They arguably constituted property of debtor's estate pursuant to 11 U.S.C. § 541(a) to which it was entitled.

## IV

## MOTION FOR SANCTIONS BY DEBTOR

Debtor has responded to TAMKO's Rule 9011 motion by filing a Rule 9011 motion of its own, wherein it seeks to recover its own legal fees and expenses in defending against TAMKO's motion. The basis for its counter-motion is not clear. Debtor ap-

pears to be claiming that TAMKO should be sanctioned under Rule 9011 because TAMKO's Rule 9011 motion was abusive in that it was designed to harass and intimidate debtor. This assertion is without merit.

■ Sanctions may be imposed under Rule 9011 when an opposing party brings a Rule 11 motion of its own in order to harass and/or intimidate one's opponent:

The growing tendency to extend the Rule beyond its text and intent concerns us, as does the noticeable increase in unjustified requests for sanctions. The Rule is being perverted when used as a tool for harassment rather than as an instrument to prevent abuse ...

The use of Rule 11 as an additional tactic of intimidation and harassment has become part of the so-called "hardball" litigation techniques espoused by some firms and their clients. Those practitioners are cautioned that they invite retribution from courts which are far from enchanted with such abusive conduct.

*Gaiardo,* 835 F.2d at 484–85.

■ Debtor has not shown that TAMKO's Rule 11 motion was designed to harass or intimidate debtor or was abusive in any way. TAMKO's own motion was based upon a misconstrual of debtor's cause of action against it, and was not the product of TAMKO's desire to play "hardball". As has been noted, TAMKO's own motion was predicated upon the erroneous premise that debtor's complaint in reality stated an action for breach of contract. The court has no doubt that TAMKO's mistake in this regard was genuine and was not feigned or contrived. Were TAMKO correct in this regard, its own Rule 11 motion would have been more substantial, inasmuch as TAMKO had never contracted with *debtor* and had never agreed to pay it for hauling its products.

TAMKO's error in this matter, while certainly sufficient to defeat its own Rule 9011 motion, just as certainly is not sufficient to justify imposing sanctions against it for bringing its own motion. To impose sanctions in such a situation would have a

chilling effect that is not contemplated by Rule 9011.

An appropriate Order will be issued.